UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

```
-------------------------------------------------- X
                                                   :
LETTA SINGLETON-WALL,                              :
                                                   :   Civil Action No.   25-759
     Plaintiff,                                    :
                                                   :   COMPLAINT
          v.                                       :
                                                   :   Filed Electronically
ACADIA HEALTHCARE D/B/A TOWER                      :
BEHAVIORAL HEALTH,                                 :   Jury Trial Demanded
                                                   :
     Defendant.                                    :
-------------------------------------------------- x
```

## COMPLAINT

### Nature of the Action, Jurisdiction, and Venue

1. This is an individual action under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000, the Civil Rights Act of 1866 (42 U.S.C. §1981), and the Pennsylvania Human Relations Act (PHRA 43 Pa. C.S.A. § 951 *et seq.*) for adverse actions taken in violation of the prohibitions against race discrimination and retaliation, and to make Plaintiff whole.

2. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331 and, for supplemental state claims, 28 U.S.C. § 1367(a). This action is authorized and instituted pursuant to Title VII, Section 1981, and the PHRA.

3. The actions and policies alleged to be unlawful were committed in and around Reading, PA, where Plaintiff worked and where Defendant maintains facilities, and, therefore, this action is within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania, and the venue is proper.

4. Plaintiff filed a timely charge of discrimination with the responsible administrative agency

(the City of Reading Human Relations Commission) on the basis of race and retaliation and is filing this complaint after receiving the Right to Sue from the EEOC (issued November 14, 2024).

5. There is no administrative exhaustion requirement under Section 1981.

### Parties

6. Plaintiff Letta Singleton-Wall (hereinafter referred to as "Plaintiff" or "Singleton-Wall"), has resided at all relevant times at 2515 Perkiomen Avenue, Mt. Penn, PA 19606. Plaintiff was employed by Defendant from on or about August 12, 2021, until on or about November 29, 2022, when she was terminated.

7. Defendant Acadia Healthcare DBA Tower Behavioral Health (hereinafter referred to as "Defendant" or "Acadia Healthcare"), is an inpatient facility that provides mental health and addiction treatment to adults age 18 and older and adolescents age 14-17. Defendant maintains its main facility at 201 Wellness Way, Reading, PA 19605.

8. Defendant is a person within the meaning of Title VII, Section 1981 and the PHRA.

9. At all relevant times, Defendant has been subject to Title VII, Section 1981 and the PHRA.

### Background and Statement of Claims

10. Plaintiff was hired as a Billing Specialist by Defendant on August 12, 2021.

11. Plaintiff is a black female.

12. Plaintiff possesses the necessary skills and qualifications to perform the essential functions of the positions she filled while employed by Defendant (Billing Specialist and Business Office Supervisor) and other positions within Defendant's operations.

13. Plaintiff performed the duties of each of her positions satisfactorily.

14. In or about July 2022, new managers (both white) assumed the positions of Manager of the Business Office and the Business Office Manager.

15. Plaintiff reported to these new managers.

16. Over the course of the next several months, up to and through the time she was terminated, Plaintiff was subjected to demeaning and disparate treatment by her managers.

17. This had not been true prior to these individuals assuming their roles in or about July 2022.

18. These managers did not treat white employees in the same demeaning manner.

19. Plaintiff's managers also began to exclude Plaintiff from business meetings that were integral to Plaintiff performing her job.

20. Plaintiff's managers did not exclude white employees from such meetings.

21. Plaintiff's managers also excluded Plaintiff from interviews for positions within the department despite Plaintiff being responsible for such hirings or placements.

22. Plaintiff's managers also prohibited Plaintiff from faxing or mailing documents to the Director, faxings and mailings that were also integral to Plaintiff performing her duties.

23. Plaintiff's managers did not restrict or interfere with other white employees in the performance of their duties.

24. On or about October 31, 2022, as Plaintiff was entering the office Plaintiff and a white employee almost bumped into each other.

25. As Plaintiff started to apologize the white employee angrily called Plaintiff a "monkey."

26. Plaintiff understood this statement to be a derogatory racial remark and intended as an insult to her and her race, black.

27. The white employee ran from Plaintiff.

28. Plaintiff reported the incident via email to the CEO (white) and the Human Resources Director (white).

29. Plaintiff was told that nothing could be done about the incident without the name of the employee.

30. On or about November 29, 2022, the Director (white) began yelling at Plaintiff about an account, and then approached Plaintiff like she was going to hit Plaintiff.

31. Plaintiff tried to explain the status of the issue, but the Director would not permit Plaintiff to do so.

32. Within minutes after this Plaintiff was told to return her badge and keys, and was told Plaintiff had "resigned."

33. This was false: Plaintiff did not resign, Plaintiff was terminated.

34. White workers were not subjected to the same hostile, unfair treatment as Plaintiff, were not unfairly restricted in the performance of their duties, and were not terminated for false reasons the way Plaintiff was.

35. Plaintiff was treated differently, and adversely, because of her race (black).

36. Plaintiff was terminated because of her race (black).

37. Plaintiff was also terminated in retaliation for having complained of race discrimination.

38. The termination occurred within close temporal proximity of Plaintiff's complaint.

39. Defendant's actions are a violation of Title VII, Section 1981 and the PHRA's prohibition against race discrimination, and against retaliation for having engaged in a protected activity (complaining about race discrimination).

40. Defendant's racial discrimination and retaliation against Plaintiff was knowing and willful.

41. Plaintiff is seeking lost wages; lost benefits (including retirement and health benefits); compensatory damages; punitive damages; attorney's fees; and, costs for the violations of Title VII, Section 1981 and the PHRA.

**COUNT I:  Title VII/PHRA – Race Discrimination (Disparate Treatment)**

42. Plaintiff incorporates by reference paragraphs 1 through 41 of this Complaint as though the same were more fully set forth herein.

43. Plaintiff was an employee of Defendant within the meaning of Title VII and the PHRA.

44. Plaintiff is in a protected group based on race (black).

45. Plaintiff was qualified for her positions as a Billing Specialist and Business Office Supervisor and other available positions.

46. Plaintiff performed her job satisfactorily throughout the course of her employment with Defendant.

47. Plaintiff was subjected to racially offensive language at work because of her race.

48. Plaintiff was treated less favorably by Defendant than whites in similar circumstances.

49. Defendant took an adverse employment action against Plaintiff, termination of her employment, because of her race.

50. Defendant's stated reason for Plaintiff's termination (that Plaintiff "resigned") was false and pretextual.

51. The real reason for the termination was Plaintiff's race.

52. Defendant treated Plaintiff less favorably than whites and gave false reasons for her termination because of Plaintiff's race (black).

53. Defendant's actions constitute racial discrimination in violation of Title VII and the PHRA.

54. Defendant's racial discrimination against Plaintiff was intentional and knowing.

55. As a result of Defendant's discriminatory conduct, Plaintiff has suffered tangible and intangible losses in the form of lost wages, lost benefits, lost promotional opportunities, humiliation and mental anguish and damage to reputation.

56. Plaintiff seeks to recover an amount equal to these tangible and intangible losses, as well as interest, attorney's fees and costs and punitive damages.

### **COUNT II:  Section 1981 – Race Discrimination (Disparate Treatment)**

57. Plaintiff incorporates by reference paragraphs 1 through 56 of this Complaint as though the same were more fully set forth herein.

58. Plaintiff is an employee of Defendant within the meaning of Section 1981.

59. Plaintiff is in a protected group based on race (black).

60. Plaintiff was qualified for her positions as a Billing Specialist and Business Office Supervisor and other available positions.

61. Plaintiff performed her job satisfactorily throughout the course of her employment with Defendant.

62. Plaintiff was subjected to racially offensive language at work because of her race.

63. Plaintiff was treated less favorably by Defendant than whites in similar circumstances.

64. Defendant took an adverse employment action against Plaintiff, termination of her employment, because of her race.

65. Defendant's stated reason for Plaintiff's termination (that Plaintiff "resigned") was false and pretextual.

66. The real reason for the termination was Plaintiff's race.

67. Defendant treated Plaintiff less favorably than whites and gave false reasons for her termination because of Plaintiff's race (black).

68. Defendant's actions constitute racial discrimination in violation of Section 1981.

69. Defendant's racial discrimination against Plaintiff was intentional and knowing.

70. As a result of Defendant's discriminatory conduct, Plaintiff has suffered tangible and intangible losses in the form of lost wages, lost benefits, lost promotional opportunities, humiliation and mental anguish and damage to reputation.

71. Plaintiff seeks to recover an amount equal to these tangible and intangible losses, as well as interest, attorney's fees and costs and punitive damages.

### COUNT III:  Title VII/PHRA – Retaliation

72. Plaintiff incorporates by reference paragraphs 1 through 71 of this Complaint as though the same were more fully set forth herein.

73. Plaintiff was an employee of Defendant within the meaning of Title VII and the PHRA.

74. Plaintiff engaged in a protected activity: complained about racial discrimination in the workplace.

75. Plaintiff suffered an adverse action in close temporal proximity following the protected act (termination).

76. There is a causal connection between the protected act and the adverse employment action.

77. There is no bona fide business reason for the adverse action.

78. Defendant's retaliation against Plaintiff is in violation of Title VII and the PHRA.

79. Defendant's violation is knowing, willful, and in reckless disregard of Title VII and the PHRA.

80. As a result of Defendant's discriminatory, retaliatory conduct, Plaintiff has suffered tangible and intangible losses in the form of lost wages, lost benefits, lost promotional opportunities, humiliation and mental anguish and damage to reputation.

81. Plaintiff seeks to recover an amount equal to these tangible and intangible losses, as well as interest, attorney's fees and costs and punitive damages.

## COUNT IV: Section 1981 – Retaliation

82. Plaintiff incorporates by reference paragraphs 1 through 81 of this Complaint as though the same were more fully set forth herein.

83. Plaintiff was an employee of Defendant within the meaning of Section 1981.

84. Plaintiff engaged in a protected activity: complained about racial discrimination in the workplace.

85. Plaintiff suffered an adverse action (termination) in close temporal proximity following the protected act.

86. There is a causal connection between the protected act and the adverse employment action.

87. There is no bona fide business reason for the adverse action.

88. Defendant's retaliation against Plaintiff is in violation of Section 1981.

89. Defendant's violation is knowing, willful, and in reckless disregard of Section 1981.

90. As a result of Defendant's discriminatory conduct, Plaintiff has suffered tangible and

intangible losses in the form of lost wages, lost benefits, lost promotional opportunities, humiliation and mental anguish and damage to reputation.

91. Plaintiff seeks to recover an amount equal to these tangible and intangible losses, as well as interest, attorney's fees and costs and punitive damages.

## **PRAYER FOR RELIEF**

92. WHEREFORE, Plaintiff respectfully requests that this Court:

   A. Grant a permanent injunction enjoining Defendant, its officers, successors, and assigns and all persons in active concert or participation with them from engaging in unlawful employment actions or practices which violate Title VII, Section 1981 and the PHRA.

   B. Order Defendant to make Plaintiff whole by paying appropriate back pay with prejudgment interest, in amounts to be proven at trial, and other affirmative relief – including reinstatement - necessary to eradicate the effects of its unlawful employment practices.

   C. Order Defendant to pay the costs and reasonable attorney's fees incurred by Plaintiff.

   D. Grant such further relief as the Court deems necessary and proper, including punitive damages.

Respectfully submitted,

 s/Joseph H. Chivers
Joseph H. Chivers, Esq.
PA ID No. 39184
The Employment Rights Group, LLC

                                      1575 McFarland Road, Suite 302
                                      Pittsburgh, PA 15216
                                      jchivers@employmentrightsgroup.com
                                      Tel: (412) 227-0763
                                      Fax: (412) 774-1994

                                      *Counsel for Plaintiff*
                                      *Letta Singleton-Wall*

Dated: <u>February 12, 2025</u>